# SUPREME COURT.

## MARCH TERM, 1851.

A. F. WEBB & CO. Applts. vs. PROTEC. AND ETNA INS. COM., RESPOND'TS.

1. In a policy, containing the following proviso, viz: "Provided, always, and it is hereby declared that this company shall not be liable to make good any loss by theft; or any loss or damage by fire, which may happen, or take place by means of any invasion, insurrection, riot, or civil commotion, or of any military, or usurped power," the clause protecting the company against losses by theft, is independent of the one immediately following it.

2. It is the duty of the court to give effect to both clauses, and every clause of the contract, if it can be done, although the result of such a construction may be to diminish the value of the security. It is for parties to make their own contracts, and courts of justice cannot relieve against injudicious ones, unless upon the ground of fraud, or mistake or some other ground known to the administration of justice.

## APPEAL from St. Louis Circuit Court.

### STATEMENT OF THE CASE.

These two cases were tried together in the court below, being submitted to the same jury on the same day on the same evidence; and the court having instructed the jury as hereinafter stated, the plaintiffs submitted to a non-suit in each case, moved to set the same aside for reasons, and on the refusal of the court so to do, appealed in each cause to this court.

The petition, in each case, set out that the plaintiffs were insured by the defendants on their stock of goods in a store at St. Louis, according to the policy annexed to the petition. That the goods were, on the night of the 17th May, 1849, exposed to loss by fire. That three sides of the building containing them were surrounded by burning houses, and the building itself was partially on fire. That the plaintiffs endeavored to save the goods by removing and did remove them; and that in the removal they were pillaged, lost and destroyed, by reason and in consequence of the efforts so made by plaintiffs to same them from the fire, to the amount of four thousand nine hundred and seventy dollars. That due notice was given, and proof made of the loss, but that defendants refused to pay the same.

Webb & Co. appellants, vs. Protection and Aetna Insurance Company, respondents.

The policy which was annexed to each petition contained in each case the following proviso, viz: "Provided, always, and it is hereby declared that this company shall not be liable to make good any loss by theft, or any loss or damage by fire which may happen or take place by means of any invasion, insurrection, riot or civil commotion or of any military or usurped power."

Among the conditions of insurance annexed to, and made part of each policy, is to be found the following, viz:

"In case of fire, or loss or damage thereby, or of exposure to loss or damage thereby, it shall be the duty of the insured to use all possible diligence in saving and preserving the property ; and if they shall fail to do so, this company shall not be held answerable to make good the loss and damages sustained in consequence of such neglect."

If one of the policies (that of the Protection Insurance Company) this condition is twice repeated, viz: in the 9th and 17th conditions of insurance.

The defendants in their answers denied the loss, denied a compliance with the conditions of the policy, and also denied that the loss had been adjusted in each case; which answers were verified by affidavit of defendants' agents; residents here,

At the trial the plaintiffs read the policies in each case, and gave evidence tending to prove the following facts, viz: That on the night of the 17th May, 1849, the stock insured by the policies was exposed to fire; the building in which the same was being surrounded on three sides by burning houses, and being actually on fire itself. That plaintiffs in conformity with the several sections of the conditions respectively of said policies, used all possible care to save the stock from the loss to which it was exposed by remaining in the building. That plaintiffs caused the stock to be moved from said burning building to the distance of a square or thereabouts, having first caused the more valuable parts thereof to be tied up in bundles, preparatory to the removal. That the burning building was on Main street, near Locust street. That the stock was removed to the corner of Locust and Second streets, and that after it was taken from the store of the plaintiffs, and before it was returned thereto, which was on the following day, a loss was sustained by pillage, waste, and otherwise, to the amount of four thousand nine hundred and seventy-six dollars, all of which was the consequence of the attempt on the part of the plaintiffs to comply with the conditions annexed to the policies of insurance.

That there was a great noise, crowd and disturbance, confusion and disorder in the streets of St. Louis on the night of the 17th of May, 1849, that being the night of the great fire. That the goods so lost and missing by reason of said removal were stolen and pillaged by thieves who infested the streets on that night. That notice of the loss and preliminary proof of its amount and nature were made by the plaintiffs to the Insurance Companys, respectively, except so far as compliance with the conditions of the policies in this respect was waived by the said companies. That the insurance companies paid the damages done by fire to the stock remaining on hand after the fire, but refused to pay for such goods as had been lost to the plaintiffs by reason of the removal from the burning building. That the building in which the goods originally were was not destroyed or seriously injured by the fire. That said building was what is termed fire-proof, and that several other buildings also called and considered fire proof, and insured as such, were burned on the same night. That the receipts given by the plaintiffs, and referred to in the answer of defendants, referred to the damages, and not to the lost goods, and that both parties at the time so understood them. That the plaintiffs did not on adjudging their claim for the damaged goods waive their claim for the lost goods.

Plaintiffs then offered to prove that the defendants had paid similar losses to other persons insured by policies containing the same clauses and conditions as those read in evidence in this cause. The defendants objected; the court sustained the objection, and plaintiffs excepted.

Defendants asked the following instruction, which the court gave, the plaintiff objecting and excepting thereto, viz: "That the plaintiffs are not entitled to recover in this action, for the value of any goods stolen from them."

Plaintiffs asked the following instruction : "If the jury believe from the evidence that the property of the plaintiffs was lost as in their petition alleged, that the said property being exposed to loss and damage by fire, the said plaintiffs used all possible diligence to save and preserve the said property in good faith and according to the 7th condition of insurance, annexed to said policy, and that in consequence of such efforts to comply with and perform the said condition of said policy ; the goods and property mentioned in the petition were lost : then the plaintiffs are entitled to recover." Which instruction the court refused, and plaintiffs excepted. The plaintiffs thereupon took a non-suit, with leave to move to set the same aside, and on the same day filed a motion to set aside the non-suit for the following reasons : 1st. The court gave erroneous instructions. 2nd. The court refused proper instructions. 3d. The court excluded competent evidence from the jury.

The court overruled the motion, and the plaintiffs excepted, and appealed to this court.

## GANTT, for appellants.

I. That the "loss by theft" mentioned in the policies which are the foundation of these actions, is, by the context, confined to such theft as might arise from, or grow out of, or "happen, or take place by means of any invasion, insurrection, riot or civil commotion, or of any military or usurped power."

II. That at all events the conditions of insurance being positive and unmistakable, will control any proviso which precedes those conditions or ambiguous in itself, and at variance with the conditions imposed upon the insured. 1 Duer on Ins. p. 162 and following.

III. The conditions of the policies require the assured, under heavy penalties, to do certain contingencies. The assured, in attempting to carry out the conditions of the policies, are the agents of the companies ; and the companies are liable for all the consequences of an attempt made in good faith to comply with the conditions of the policies.

IV. If there be any contrariety between the proviso and the conditions of the policies, the companies who have created the contradiction, cannot claim to have it resolved in their favor, nor if the meaning of the policies be rendered equivocal or obscure, by the phraseology adopted by the companies, can they now ask for any interpretation which the event alone indicates as the most favorable to them. The language of the law is *pactionem obscuram is nocere quorum in potestate fuit rem apercius dicere*—(an obscure phrase is to be construed *against* him, who could have rendered it unequivocal, but did not.") Palmer vs. Warren Ins. Co., 1 Story R. 360 ; Donnell vs. Columbia Ins. Co., 2 Summer's R. 381 ; Duer on Ins. 209 ; 1 Marshall on Ins. 305.

V. The loss is one for which the assurers are liable unless exempted expressly and unmistakably from liability by the terms of the policies. 1 Burrow's R. 341 ; Pelly vs. Governor & Co. of the Roy. Exch. Assur.; Levi vs. Baillie et al., 7 Bing 349 ; Yeaton vs. Fy, 5 Cranch 335 ; Ellis on Ins. 17 & seq.

VI. If the whole policy be susceptible of two constructions, one fixing the liability of the assurers, and the other exempting them from liability, that construction is to be preferred which fixes the liability of the underwriters, and makes the policy what the common sense of the commercial world understands it to be—a contract of indemnity. 2 Crompton & Jarvis, 244, Blackett vs. Royal Exch. Ass. Co.; Yierney vs. Etherington, quoted by Ld. Mansfield in 1 Burr. 341; Grant vs. Delacour, cited by Lord Mansfield in Grant vs. Paxton; 1 Taunton. 474; 10 Johns R. 120; 1 Duer and following; Palmer vs. Warren Ins. Co , 1 Story 360 ; Donnell vs. Col. Ins. Co , 2 Suer's R., 381 ; 1 Marshall on Ins. 305; 1 Duer on Ins. 209.

VII. The plaintiff should have been permitted to show the practical construction given by the companies themselves to the proviso in question, in cases like the present. Walsh vs. Homer, 10 Mo. R. 6, and cases there cited ; 1 Duer on Ins. p. 166 to 172 inclusive, and cases cited in appendix to 2nd section; ib. §37 pp. 185, 214, 223 ; 9 Wheat. 587 (5 Com. S. C. R.

**Webb & Co. appellants, vs. Protection and Aetna Insurance Company, respondents.**

491, and cases cited in the notes to that decision;) 7 Com. 202, Astor & al. vs. Union Ins. Co. 7 John's R. 386; Coit & Pierpont vs. Com. Ins. Co.

### GAMBLE, BATES & HILL for respondents.

This whole case turns upon the construction of a simple clause in the policy. The clause by which the company contracts to indemnify the plaintiffs is in these words, "and the said company do hereby promise and agree to make good to the said assured their executors, administrators and assigns, all such loss or damage, not exceeding in amount the sum insured as shall *happen by fire* to the property above specified."

Immediately following this language of contract is a proviso which declares that the company "shall not be liable to make good any loss by theft, or any loss or damage by fire, which may happen to take place by means of any invasion, insurrection, riot or civil commotion, or of any military, or usurped power."

The appellants claim, that they in good faith removed their goods from their store, and that during or after the removal, a large amount was stolen, for which they seek to recover as "a loss or damage happening by fire to the property insured."

I. The first question to be considered is, whether the larceny was "a loss or damage happening by fire," within the meaning of the clause of indemnity, independent of the limitation contained in the proviso. If it was not, the insurers are not liable. Austin vs. Drew, 6 Yaunt. 436; Billier vs. Alleghaney Ins. Co. Barr 470.

II. Supposing a larceny of the goods happening during a removal which was rendered necessary by a fire, would be covered by the clause of indemnity, we next enquire into the meaning and effect of the proviso.

The rules of construction, that the policy is to be taken most strongly against the company; and that a clause containing an exception is to be construed most strongly against the party in whose favor the construction is made, are not objected to. Any rule of construction by which words are to be interpolated, or are to be stricken out of the contract, or by which a court is to give a meaning and effect to a clause that the judge feels is not the natural and true meaning of the language, and is therefore not what the parties really meant, is most strenuously objected to.

If the first number of the proviso, ("the company shall not be liable to make good any loss by theft,") is not qualified by subsequent words, the case is ended—the plaintiff cannot recover.

The effect then has been to qualify it by bringing forward the last part of the sentence and connecting it with this part relating to theft, so as to make the sentence read, "the company shall not be liable to make good any loss by theft which may happen or take place by means of any invasion, insurrection, riot or civil commotion, or any loss or damage by fire which may happen or take place by means of any invasion, insurrection, riot or civil commotion."

It is admitted that this is a most forced an unnatural construction of the sentence.

It is conceded by the plaintiff's counsel that the insurer is only liable under the indemnity clause to make good a loss by larceny when it is connected with and results from a fire, so as to be embraced by the words in that clause of "a loss or damage happening by fire." Now the last exception in the proviso which includes a loss or damage by fire, which may happen or take place by means of any insurrection," or would, itself, exclude larceny as a damage or loss by fire in the case of insurrection or other means mentioned as producing the fire, so that the first exception of a loss by theft might just as well be stricken out of the sentence altogether. The construction contended for does, in effect, strike out this part of the sentence.

The natural, and I feel authorized to say, the obvious meaning of the proviso, is to exclude two classes of losses: 1. All losses by larceny, happen as they may; 2. All losses or damages of every description occasioned by fire, which may happen or take place by means of the commotion and tumults mentioned in the proviso. If there is a fire kindled in any way, and the property insured is not destroyed nor damaged but is stolen, the insurer is not to pay for it, this is the first class. If there is a fire kindled in an invasion, insurrection, riot or civil commotion, and the property is burned or damaged or lost by the fire, the insurer is not bound to pay for it, this is the second class. In this way the whole sentence is sensible and operative.

Webb & Co. appellants, vs. Protection and Aetna Insurance Company, respondents.

The suggestion that there is a repugnance between the clause and the conditions of the policy, is entitled to but little consideration.

The policy on its face provides that the conditions are to be referred to, to explain the rights of the parties in all cases not in the body of the policy specially provided for. If there was a repugnance, the construction must yield to the terms in the policy itself. But there is no repugnance. The obligation to use diligence in removing the goods in case of danger, extends no further than to require that they shall be removed as fast as may be consistent with their safety from thieves. The insured is not required to rescue them from one danger and expose them to another. He is no more required to expose them to thieves, in order to save them from being burned, than he is to pitch the mirrors from a window on to the pavement in the street (as is often done) to save them from the flames.

It is submitted, that the principles of construction laid down in 1 Story 360, and the end that the judge endeavored to arrive at, sufficiently show that in this case the construction which the plaintiffs put upon the written contract, is one that is not reasonable nor natural. 13 Ohio R. 64.

Upon the question about rejecting the evidence of payments made to other persons who had goods stolen, it cannot be necessary to enlarge. The legal effect of a written contract, with such plain stipulations as are in this policy, is not to be changed by any such evidence.

NAPTON, J., delivered the opinion of the court.

We cannot doubt, that the clause in this policy designed to protect the company against losses by theft is independent of the one immediately following it, which excepts from the policy such losses by fire as occur during invasions, insurrections and similar commotions. The object of the policy is to secure against losses by fire, and any loss by theft not attributable directly to the fire, would not be within the contract, and when the company exempt themselves from liability for fires which happen by reason of invasions, &c., it is superfluous to add, that losses by theft occasioned by such fires would also be without the protection of the policy. Indeed the structure of the sentence will not admit of such a construction, without doing great violence to the ordinary rules of our language.

There is more difficulty in reconciling this exemption with other specific provisions, and with the general scope of the contract.

It is provided, that "this company shall not be liable to make good any loss by theft."

In another clause, it is declared that "in case of fire or loss or damage thereby, or of exposure to loss or damage thereby, it shall be the duty of the insured to use all possible diligence in saving and preserving the property; and if they shall fail to do so, this company shall not be held answerable to make good the loss and damage sustained in consequence of such neglect."

If the exception in question were stricken out of the policy, it is not doubted, that the company would have been liable for losses by theft, occurring during fire, without negligence in attempts to save the pro-

perty insured.    The question is, can such an exception stand, in a policy which enjoined upon the insured to use all possible diligence in saving the property, and which exempts the underwriters from all responsibility if such diligence is not exerted?

It is clearly the duty of the court to give effect to both clauses, and every clause of this contract, if it can be done, although the result of such a construction may be to diminish the value of the security.    It is for parties to make their own contracts, and courts of justice cannot relieve against injudicious ones, unless upon the ground of fraud, or mistake or some other grounds not pretended to have any existence here.

The substance of this policy may be thus stated.    The company make themselves responsible for all losses by fire, except such as occur during certain civil commotions, &c.    Thefts occasioned by a fire, are within such a policy, unless expressly excepted—for they are losses by fire. But here the exception is made, and it is clearly intended that for losses of this kind the insurers will not be responsible.    It is not within the province of courts to interfere, because such provisions may be thought injurious to the interests of the assured and tending to lessen the value of the indemnity.    Both parties are presumed to be competent to guard their own interests.

It may be, that the effect of the stipulation, which exacts due diligence from the assured in rescuing his property from the flames, is to require him to subject his property to a risk against which he has no protection.    It would seem that such is the effect of such a stipulation. No vigilance can always guard against thefts in such a crisis as an extensive fire in a populous city creates.    If the goods were negligently lost by theft, no such clause as is in this policy would be necessary to exempt the company from liability for such losses—but this is a class of losses by fire, against which the policy offers no indemnity.    It is for those who take such policies to estimate to what extent this diminishes their value.    In certain descriptions of property where the value of the property is very great in proportion to its bulk, such policies are obviously greatly less valuable than where the property is of a kind not easily removed, without detection.

Suppose in a contract of insurance, it was stipulated that the insured should in case of fire, cause the premises to be flooded with water, and it was further declared that the underwriter would not be responsible for any losses occasioned by water.    The insurers are to pay all losses by fire, but the insured are required to use all exertions to extinguish the fire by an element which must inevitably impair the value of the

property insured.   The more effectually the insured comply with their
bargain the more effectually they diminish their own security.   But I
cannot say, even in such a case as this, that the contract fails entirely
as one of indemnity, for all losses by fire are still insured against, and it
must depend upon circumstances whether the contract proved to be a
valuable one or not.   It is better, where the terms of the contract are
plain, and the meaning such as to be understood, that we should follow
the plain language, and manifest intent rather than seek out a doubtful
interpretation with a view to reconcile all the clauses to the supposed
interests and objects of both parties.

Judgment affirmed.