PALATINE INS. CO., Limited, v. COYLE et al. (No. 7406.) *

(Court of Civil Appeals of Texas. Galveston. May 30, 1917. Rehearing Denied June 14, 1917.)

1. CONTRACTS ⬅189—CONSTRUCTION—SUBJECT-MATTER.

The subject-matter of a contract must be considered in determining the meaning, scope, and extent of its language.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 811–845, 900–902, 905.]

2. CONTRACTS ⬅174—CONSTRUCTION—EXCEPTIONS.

Exceptions contained in a contract will be presumed to relate to matters that not only are relevant to the contract, but also would be embraced within its terms if not expressly excepted therefrom.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 765.]

3. INSURANCE ⬅423—TORNADO POLICY—LIABILITY OF INSURER—DAMAGE FROM WIND-DRIVEN WATER.

Under a policy insuring against "loss or damage by a tornado, windstorm, or cyclone * * * except as hereinafter provided," and thereafter providing that the insurer should not be liable for a loss occasioned by tidal waves or high water or for any loss caused by water or rain driven by wind, or unless the insured building should sustain damage to the roof or walls by force of the wind, and should then be liable only for such damage to the interior of the building or the insured property therein as

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

might be caused by water or rain entering through openings made in the roof or walls by the direct action of the wind, the insurer was not liable for damage caused by wind-driven water, the combined action of wind and water waves, especially where there was no evidence that wind-driven water damage either necessarily or invariably attended windstorms in that vicinity.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1127.]

Error from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by B. A. Coyle and another against the Palatine Insurance Company, Limited. Judgment for plaintiffs, and defendant brings error. Affirmed in part, and reversed and rendered in part.

Williams & Neethe, of Galveston, and Locke & Locke, of Dallas, for plaintiff in error. Stewarts, of Galveston, for defendants in error.

GRAVES, J. A general statement of the case adopted by both parties is thus made:

This suit was brought by B. A. Coyle and J. H. Langbehn against the Palatine Insurance Company, Limited, to recover under a tornado policy issued by it on a two-story brick veneer tile roof apartment building at 913–923 Boulevard street, city of Galveston, for damage suffered in the storm of August 16–17, 1915. The company defended on the ground that the damage claimed resulted in part from causes excepted from the policy, which provided that the company should not be liable for any loss or damage occasioned directly or indirectly by any tidal wave, high water, overflow, or cloudburst, or for any loss or damage caused by water or rain, whether driven by wind or not, unless the building insured should first sustain an actual damage to the roof or walls of the same by the direct force of the wind, and that the company should then be liable only for such damage to the interior as might be caused by water or rain entering through openings first made by the direct action of the wind.

In the course of the suit an agreement was reached, as a result of submission to a committee of contractors, that the total loss and damage to the insured property during the storm from all causes was $4,512.43, of which the loss and damage caused by the direct action of the wind independently of water in any form was $500, and the loss or damage to the interior caused by water or rain entering through openings in the roof or walls made by the direct action of the wind alone, independently of water in any form, was $660; the remaining damage of $3,352.43 being due to the combined action of wind and water.

The company offered to pay the plaintiffs the two sums first mentioned, aggregating $1,160, but the plaintiffs refused to accept the same, demanding payment of the total damage. The sole controversy in this case

is over the liability for the remaining damage.

The case was tried before the court without a jury on agreed facts, and resulted in a judgment for the plaintiffs for the total damage claimed, $4,512.43, with interest and costs of suit. The defendant thereupon brought the case to this court by writ of error for the revision of the judgment.

We also insert the material provisions of the policy sued upon:

"The Palatine Insurance Company, Limited, of London, England, * * * does insure B. A. Coyle * * * against all direct loss or damage by tornado, windstorm, or cyclone, except as hereinafter provided, to an amount not exceeding twelve thousand and $^{00}/_{100}$ dollars, to the following described property. * * * This policy is made and accepted subject to the following stipulations and conditions printed on the back hereof, which are hereby specially referred to and made a part of this policy."

On the back of the policy are provisions as follows:

"This company shall not be liable for any loss or damage * * * occasioned directly or indirectly by or through any fire, explosion, tidal wave, lightning, high water, overflow, cloudburst * * *.

"This company shall not be liable for any loss or damage caused by water or rain, whether driven by wind or not, unless the building insured or containing the property insured shall first sustain an actual damage to the roof or walls of same by the direct force of the wind, and shall then be liable only for such damage to the interior of the building or the insured property therein as may be caused by water or rain entering the building through openings in the roof or wall made by the direct action of the wind."

The specific finding of the above-mentioned committee, and therefore the agreed statement of fact, as to the damage over which the controversy arose, was the following:

"That the loss and damage to the said building, exterior and interior, resulting from the combined action of the wind and water in whatever form, omitting damage to the interior included in the next preceding item of this award, was $3,352.43."

In reference to this finding the litigants made this agreement:

"Committeemen appointed by the parties to this suit, in pursuance of a written agreement referred to in the preceding paragraph, having found that certain loss or damage resulted from the combined action of wind and water, it is agreed that as to such loss or damage so found by the committeemen it is impossible to determine to what extent each was an element or factor with the other in causing such loss or damage."

Among the most pertinent provisions concerning the storm, the location of the insured building, and general conditions at Galveston, contained in the agreed statement of facts, are the following:

Galveston Island is a sand island in the Gulf of Mexico just off the coast of Texas, approximately 30 miles long and with a width varying from 1½ to 3 miles. It has no mountains or hills, nor any rivers, streams, or lakes. It is substantially flat. Its course is from southwest to northeast parallel with the southeast coast of the state.

196 S.W.—36

The city of Galveston is on the eastern or northeastern end of the island and extends westwardly or southwestwardly from such end a distance of approximately 4 miles. To the northeast of Galveston is Bolivar Peninsular, a sand spit about 20 miles in length and varying in width from one-fourth of a mile to about 3 miles. Inside of Galveston Island and Bolivar Peninsular is Galveston Bay, a shallow body of water with an area of nearly 500 square miles.

In the Gulf of Mexico in the vicinity of the West India Islands tropical storms have developed regularly and frequently for a century or more. These storms are commonly known as West Indian hurricanes and are attended by high winds, high water, and high waves.

In September, 1900, such a hurricane of great violence visited the city of Galveston. During the storm the whole island was inundated with water to a depth on Broadway varying from 5 feet to 10 feet. All houses located within a distance of 4 to 6 blocks from the Gulf were destroyed.

Following the storm of 1900 a concrete sea wall about 16 feet 6 inches thick at the base and 5 feet 6 inches thick at the top and of a height of 17 feet above mean low tide was constructed from a point commencing at the northeast end of the island, being the point from which' the south jetty projected, and continuing across the east or northeast end of the island to the Gulf front and southwestwardly along the Gulf front a distance of about 2½ miles. Thereupon the general ground level of the island within the city. limits south of Broadway avenue and between it and the sea wall was raised by bringing in from the Gulf and depositing fine sand thereon.

The property in question is shown' to have had an elevation of 10 feet above mean low tide after the grade raising had been completed. The building on account of which the claim is made for loss or damage was built after the grade raising had been completed and on the filled ground, and its foundation did not extend below the fill.

Another severe storm visited Galveston in 1909, but did comparatively little damage. However, following it, the level ground over a strip about 250 to 300 feet wide and just inside of the sea wall was slightly raised so that for a distance of 200 feet from the sea wall the water would drain toward the Gulf. After this had been done, no change in conditions occurred until the storm of August 16–17, 1915.

On August 16–17, 1915, the city of Galveston was visited by another severe storm, attended, as before, by high wind, high water, and high waves. Compared with the storm of September 8, 1900, the pressure was not quite so low, and probably the wind was not quite so high, but the duration was nearly three times as great, and, from the best information obtainable, the tide was some-what higher. The wind became of recognizable characteristic puffs of the hurricane in the forenoon of August 15th, almost two days before the storm reached its worst, and the Gulf waters became rough as the wind increased and drove them against the sea wall. A large part of the property damage in this storm resulted, not from the direct force of the wind, but from the high tide which flooded the business district to a depth of from 5 to 6 feet and damaged stocks of goods in both the wholesale and retail districts. Great property loss was occasioned by washing of sand from under buildings, causing their overturning or collapse. In this way approximately 200 residences were undermined and more or less seriously damaged. At its highest the water in the retail business district was approximately 5 feet above the street level; the streets being about 6.5 feet above mean low tide.

With the case thus made, we are again called upon to construe identically the same form of insurance policy recently passed upon by this court in the case of Palatine Insurance Co., Limited, of London, England, v. Steve Petrovich, 197 S. W. ——, opinion filed March 26, 1917. The cases are in all essential respects alike, except in the following particulars: In the Petrovich Case the suit was not for any damage to the interior of the insured building, but for its total loss, the last above-quoted provision in the policy being accordingly inapplicable, and the court found as a fact that the entire loss was the direct result of the wind and was not due directly or indirectly to high water; while in the present case part of the damage was to the interior of the building, which made this last-quoted provision in the policy directly applicable, and in the agreed statement of facts, as above recited, it was admitted that the $3,352.43 of the total damage was caused by the combined action of the wind and water. But the legal question upon the construction of the policy is precisely the same in both cases, and that, under the admitted facts here, is the only one presented by this appeal. Advised of its special importance, and much aided by the very able briefs and arguments submitted by both parties, we have for the second time given this question careful consideration, but find ourselves unable to change the view expressed in the Petrovich Case. In the course of that opinion it was said:

"We think that the policy by its terms was essentially and plainly a wind-damage policy. In making the contract with the insured therein contained it was very evidently intended by the insurance company not to insure him against the very kind of a loss he here sustained; that is, one caused either directly or indirectly by water.

"Without refining upon the degree of causation by the highwater necessary, we think it is sufficient to say that, to our minds, it is quite clear that the water was at least a proximate cause of the loss suffered, and that is enough, under our interpretation of the contract of in-

surance as made, to bring it within the exceptions. The obligation, as undertaken by the insurance company, was not a divisible one, under which it might be held liable for any part of the loss or damage shown to have been proximately caused by or through the high water, although the other part was due to the direct action of the wind alone. If such had been the legal effect of the contract, it would have been necessary for the court and jury to distinguish between these two recoverable elements of damage, and, however difficult it may have proven, to both find and apportion to each its proper and proportionate amount of the actual loss. Warmcastle v. Scottish U. & N. Ins. Co. [201 Pa, 302] 50 Atl. 941. But the contract here does not so read. It is an insurance against wind alone, and not against loss occasioned partly by wind and partly by high water. The physical conditions surrounding the property at the time, which both parties must be held to have had in contemplation in making the contract, leave no doubt of their intention to except from the policy just such a loss as the present one.

"Galveston Island, on which the insured building stood, has no lakes, streams, or rivulets. The building itself was on dry land several feet above the sea level, and entirely secure, save in extraordinary winds, from water damage. The exceptions in this wind damage policy could have had reference only to the water damage occurring during, or as a result of, such extraordinary winds."

And the following authorities were cited: National Fire Ins. Co. v. Crutchfield, 160 Ky. 802, 170 S. W. 187, L. R. A. 1915B, 1094; Hartford Fire Ins. Co. v. Nelson, 64 Kan. 115, 67 Pac. 440; Warmcastle v. Scottish U. & N. Ins. Co., 201 Pa. 302, 50 Atl. 941; Maryland Casualty Co. v. Finch, 147 Fed. 388, 77 C. C. A. 566, 8 L. R. A. (N. S.) 308; Stover v. Insurance Co., 3 Phila. (Pa.) 38; Beakes v. Insurance Co., 143 N. Y. 402, 38 N. E. 453, 26 L. R. A. 267; Holmes v. Insurance Co., 98 Fed. 240, 39 C. C. A. 45, 47 L. R. A. 308.

Indeed, the subject-matter of the policy is solely and exclusively "direct loss or damage by tornado, windstorm, or cyclone." Indemnity for such loss or damage is the only promise contained in the policy, and such promise is expressly qualified by the phrase "except as hereinafter provided." This qualification embraces several exceptions, including those relating to 'damage by water.

It being submitted that the damage here involved was caused by combined action of wind and water, and that it is impossible to determine to what extent each was an element or factor with the other in producing it, the water was therefore one of its essential and inseparable causes.

[1] It is an elementary rule of interpretation that the subject-matter of a contract must be considered in determining the meaning, scope, and extent of any of its words or provisions. Jones on Construction of Contracts, par. 220; Beal, Cardinal Rules of Interpretation, p. 71; Black on Interpretation of Laws, par. 62, p. 171; Maxwell, Interpretation of Statutes (5th Ed.) p. 85 et seq.

[2] It is presumed that exceptions contained in a contract relate to matters that not only are relevant to the contract, but also would be embraced within its terms, if not expressly excepted therefrom. Black on Interpretation of Laws, par. 130, p. 432; Endlich on Interpretation of Statutes, pars. 184–186.

Applying these elementary rules to the policy in suit, it seems plain that the exceptions were inserted to make sure that the company's promise of indemnity did not extend to certain loss or damage, which might be held attributable to the wind, and which therefore, but for such exceptions, might be held to be covered by such promise. The exceptions are unmeaning and useless, if inserted to protect the company from liability for damage by water occurring independently of wind, because, as we think, the policy does not purport to cover anything but damage from wind. If the words "except as hereinafter provided" are applied to this subject-matter with regard to which they are used, and are given any effect at all, they can mean nothing else, it seems to us, than that the insurance company does not assume the risk of such "loss or damage by tornado, windstorm, or cyclone" as is thereinafter in those excepted provisions specified.

The proper rule of construction of this kind of insurance contract, we think, is succinctly stated in Luckett-Wake Tobacco Co. v. Globe & Rutgers Fire Ins. Co. (C. C.) 171 Fed. 147, as follows:

"The only loss insured against or which is covered by the policies is 'loss by fire,' and we do not doubt that the exception in the policies of loss caused directly or indirectly by 'riot' must include those from fire which are the work of rioters. The excepting clause necessarily relates back to a 'loss by fire,' as that phrase is previously used in the policy; otherwise the excepting clause is meaningless as referring to a loss not covered by the insurance. When we lay out of view all the intervening and inapplicable clauses in the policy, and endeavor to bring into juxtaposition those clauses which bear upon the question now involved, we think the only fair and sensible construction of the contracts is that the policies insured the plaintiff against direct loss by fire except as further therein provided, to the effect that the defendant shall not be liable for any loss caused directly or indirectly by riot. If the loss was not by fire, it was not insured against at all, and the excepting clause was useless. If the loss was by fire, it was insured against, unless the fire bringing about the loss was caused directly or indirectly by riot. If the latter, the loss comes within the excepting clause; but in the former the loss was not insured against at all, so that in either event the defense is good. That this is the fair and natural interpretation of the language of the parties in the contract sued on we do not doubt, and we think these conclusions are supported by the decisions in Insurance Co. v. Boon, 95 U. S. 117 [24 L. Ed. 395]; Insurance Co. v. Tweed, 7 Wall. 44 [19 L. Ed. 65]; and Montgomery v. Firemen's Ins. Co., 16 B. Mon. (Ky.) 442."

To the same general effect are the following cases: Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky. 7, 116 S. W. 234, 20 L. R. A. (N. S.) 277, 136 Am. St. Rep. 164; Ins. Co. v. Express Co., 95 U. S. 227, 24 L. Ed. 428; United Life, Fire & Marine Ins. Co. v. Foote, 22 Ohio St. 340, 10 Am. Rep. 735; Montgomery v. Insurance Co., 55

Ky. (16 B. Mon.) 427; St. John v. Insurance Co., 11 N. Y. 516; Neilson v. Com. Mut. Ins. Co., 3 Duer (N. Y.) 456; Michigan Fire & Marine Ins. Co. v. Whitelaw, 25 Ohio Cir. Ct. R. 197; Webb v. Ætna Protection & Ins. Cos., 14 Mo. 3.

[3] Turning now from the terms of the contract as in themselves indicating the intent of its makers, to the stated physical conditions furnishing the setting for its operation, it is apparent that no probability even of any damage by water, except in extraordinary winds, could have been in mind and intended to be insured against, because the only water there from which damage might be anticipated was in the Gulf and bay; but the sea wall and grade raising had lifted this building high above the ordinary variation of the tides, and had rendered it entirely secure so far as any danger from this only water present was concerned, except during these periodic visitations by cyclone winds; hence, with the history of the great storm of 1900, and its fearful toll of thousands of lives from drowning in the high waters, as likewise that of the lesser storm of 1909, in mind, we think the natural and plain meaning of the language here used is that the risk from wind was assumed, but not that from water. In view of the almost certain recurrence in the future of like effects from similar storms to these it well knew about, the assumption seems reasonable that this insurance company was unwilling in the kind of policy issued, its "tornado" policy, for the premium charged, to carry any other risk than that from wind. That it had the right to so restrict its liability, if such was in fact the purpose, goes without saying. Upon this point the court in Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky. 7, 116 S. W. 234, 20 L. R. A. (N. S.) 277, 136 Am. St. Rep. 164, supra, say:

"Unless it was intended by the contracts of insurance to relieve the companies from liability for fire caused by riot, the words 'except as hereinafter provided' are absolutely meaningless. The companies had the unquestioned right to insert as many reasonable provisions in the policies exempting them from liability as they thought proper or necessary. We know of no rule of law that denies to insurance companies this privilege. They may limit the amount of insurance they will offer, may limit the species of property they will insure, may provide reasonable conditions that the insured must observe, as well as conditions that will in certain states of case operate as a forfeiture of the policies or waiver of the right of the insured to recover upon them, and may protect themselves from loss resulting from causes that they do not desire to offer indemnity against. Why, then, should these words by which the companies undertook to limit their liability be stricken from the policies or ignored in their construction? They are not obnoxious to any principle of law or public policy. They are not surplusage. They are not in conflict with any other provisions in or words of the policies. They may be read harmoniously in connection with the other and subsequent clauses, and, when so read, become a material intelligent part of the contracts. They were inserted for a purpose, intended to have a meaning, are not of doubtful or uncertain import, and, when fairly and reasonably applied, they exempt the companies for loss by fire when the fire is caused by riot."

But the opposing view to these conclusions is thus stated by defendant in error:

"The hurricane, in consequence of which the water was blown over the sea wall and upon Galveston Island, must be considered as the predominant, the efficient, the proximate, the responsible cause of the damage done to the building, the cause which set the water in motion and gave to it its efficiency for harm at the time of the disaster; and the excepting clauses are repugnant to the main insuring clause of the policy, which is against 'loss or damage by tornado, windstorm, or cyclone,' under the conditions shown by the agreement to have existed for many years on Galveston Island."

His argument, presented with much earnestness and great ability, is that, under the rule requiring construction of inconsistent or ambiguous policies most favorably for the assured, the loss here suffered was necessarily covered by the terms of the policy, because high water and wind-driven water damage was, within the knowledge of the insurer who framed the insuring clause and the exception, an invariable incident of tornado and hurricane damage on Galveston Island; that, since each hurricane occurring at Galveston has been attended with such water damage, insurance against tornado and hurricane damage must, in order to give any effect to the policy, include liability for the natural incidental damage which uniformly attended the hurricane.

In support of these positions the following authorities, among others, are cited: The G. R. Booth, 171 U. S. 460, 19 Sup. Ct. 9, 43 L. Ed. 234; Insurance Co. v. Tweed, 7 Wall. 44–53, 19 L. Ed. 65; Insurance Co. v. Boon, 95 U. S. 131, 24 L. Ed. 395; Insurance Co. v. Norwich & N. Y. Trans. Co., 12 Wall. 194, 20 L. Ed. 378; Insurance Co. v. Charleston Bridge Co., 65 Fed. 630, 13 C. C. A. 58; Spensley v. Lancashire Ins. Co., 54 Wis. 433, 11 N. W. 902; Bills v. Insurance Co., 87 Tex. 551, 29 S. W. 1063, 29 L. R. A. 706, 47 Am. St. Rep. 121; Brown v. Insurance Co., 89 Tex. 590, 35 S. W. 1060; Harper v. Insurance Co., 22 N. Y. 441; Pindar v. Insurance Co., 36 N. Y. 648, 93 Am. Dec. 544; Whitmarsh v. Conway Fire Ins. Co., 16 Gray (Mass.) 259, 77 Am. Dec. 414; Insurance Co. v. Updegraff, 43 Pa. 350; Goddard v. Insurance Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1.

While much impressed with the force of this contention, we think it assumes more than the evidence shows. There is no such proof in this record as that such wind-driven water damage as occurred here either necessarily or invariably attended these windstorms; on the contrary, the exact proof was:

"These storms are commonly known as West India hurricanes, and are attended by high winds, high water, and high waves."

This is far from saying, as this argument under review does, that wind-driven water

damage uniformly attended these hurricanes as a natural incident thereof; and right here is precisely where we think the vice in the whole argument lies, and wherein is found the key to differentiation between the authorities invoked to sustain it and those we have cited in support of our own conclusions. If the facts are as stated, merely that "these hurricanes are attended by high winds, high water, and high waves," and the parties by plain and direct agreement have excepted out of their contract all damage caused or occasioned directly or indirectly by the water and the waves, in the face of agreed evidence that the damage sustained resulted from the combined action of wind and water, why go further hunting for the predominant, efficient, proximate, and responsible cause of such a loss? If the evidence had shown that such a hurricane could not possibly occur without such actual water damage as here resulted as its natural and necessary incident, then the interpretation placed upon this policy by defendant in error might be the proper one, and his cited authorities might apply; but in the utter absence of such proof, or of the possibility of making it, and in the face of what seems to us a plain agreement to the contrary, not only as to the physical facts, but also as to the meaning of the policy, we are unable to yield to his view.

It follows that, in our opinion, the insurance company was not liable for that part of the damage caused by the combined action of the wind and water. The facts having been fully developed, it becomes our duty to here render such judgment as should have been rendered in the court below. Accordingly so much of the trial court's judgment as represents the aggregate of the above-mentioned items of $500 for damage caused by the wind alone, and of $660 for damage to the interior, caused by water or rain entering through openings first made by the wind, to wit, the sum of $1,160, with interest, will be affirmed; while so much of that judgment as represents the loss or damage shown to have resulted from the combined action of wind and water, that is, the sum of $3,352.43, will be reversed, and rendered in favor of plaintiff in error.

Affirmed in part. Reversed and rendered in part.