## National Fire Insurance Company v. Crutchfield.

## Same v. Alexander.

(Decided November 11, 1914.)

### Appeals from Henderson Circuit Court.

1. Insurance—Contract of—Construction.—Insurance against all "direct loss or damage by tornado, windstorm or cyclone," except "for loss or damage occasioned directly or indirectly by or through high water or overflow," does not embrace damage caused to insured buildings situated along a stream in a territory subject to overflow, where during an unusual rise in the stream the houses are surrounded by water and a wind storm caused the waves to wash against the houses and injure them.

2. Insurance—Contract of—Construction.—It appearing that the action of the wind-storm, independent of the high water, would not have caused the damage, it can not be said either that the injury was directly caused by the windstorm or that it was not indirectly brought about by the flood.

YEAMAN & YEAMAN for appellants.

N. P. TAYLOR for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Reversing in both cases.

These two appeals present the same question and will be disposed of together.

In April, 1913, each of the appellees held a policy of tornado insurance issued by the appellant company;

they were each the owners of houses and other buildings embraced in the policies which were situated along the Ohio River in Henderson County in a section subject to overflow.

The policies insured them "against all direct loss or damage by tornado, windstorm or cyclone except as hereinafter provided." One of the exceptions referred to is as follows:

"This Company shall not be liable for any loss or damage caused by hail, whether driven by wind or not, snow-storms, frost or cold weather, nor for the blowing down of metal smoke-stacks (unless specifically insured), awnings, signs, temporary or board roof additions, nor for loss or damage to buildings (or their contents) in process of construction or reconstruction, unless same are entirely enclosed and under roof, with all outside doors and windows permanently in place; nor for loss or damage occasioned directly or indirectly by or through any fire, explosion, tidal wave, lightning, high water, overflow, cloud-burst; nor by theft, nor by reason of any ordinance or law regulating the construction or repair of buildings, nor for consequential loss of any kind."

The evidence shows that on Friday, April 4th, 1913, the river had reached a very high stage and that the water had surrounded and was from two to four feet deep in each of the insured buildings; that while the river was rising slowly until that day it had practically been at this stage for several days. On Thursday, April 3rd, a brisk wind arose in the afternoon and blew steadily all night and all day Friday until the middle of the afternoon, when it became more violent. During all this period the high wind produced heavy waves, which were driven against these buildings, and on the afternoon of the 4th, when the wind became more violent and the waves higher, the buildings were lifted from their foundations and toppled and careened over; and that is the damage sued for in each of these actions.

The evidence is conclusive that but for the high wind the overflow of the river would not have produced the damage sued for, and it is equally satisfactory that but for the almost unprecedented stage of the water the windstorm was not sufficiently severe, in and of itself, to have caused the injuries to the buildings. That is to say the two concurring causes brought about the damage which neither by itself alone would have produced.

One of the plaintiffs being asked whether the damage would have occurred but for the high water answered, "I don't think we would have had the damage that we did have if it had not been for the water being as high as it was."

The other plaintiff when asked what damage there would have been if it had not been for the high water, said, "I cannot answer that. 'I don't think it (meaning the wind) would have blown the buildings over; nor do I think we would have had any damage without the water."

Another witness for the plaintiffs stated that "the wind caused the water to do it," and if there had been no water to loosen up the foundations the wind of itself would not have blown the houses from their foundations.

Another witness for the plaintiffs stated that "the wind and waves did the work," but that the wind was not sufficient of itself to have done it.

Another witness for the plaintiffs stated that he was unable to say whether there would have been any damage if the water had not been there. but says "the water was there and the wind was there."

It is therefore perfectly apparent that neither the wind, acting independently of the flood, nor the action of the flood apart from the high wind, would have caused the damage, and the question is, under the terms of the contract, above quoted, were the appellants liable.

The contract was to insure appellee, "against all direct loss or damage by tornado, windstorm or cyclone," except "for loss or damage occasioned directly or indirectly by or through * * * high water (or) overflow."

Can it be said, under the facts of this case, that the injury was not at least indirectly occasioned by the high water? The evidence is conclusive that except for the existence of the flood at the time of the windstorm that there would have been no damage. Neither of these agencies independent of the other would have produced the damage; the plaintiffs were insured against loss by, one of them and not from loss by the other.

It is urged for appellees that the proximate cause of the damage must necessarily have been the windstorm because the water had been practically at the same stage for several days before the windstorm and had caused no damage; but this view loses sight of the admitted fact that the houses were surrounded by water which was standing in them from two to four feet deep which could

not have been driven against them by the force of the wind except for this unusual stage of the water; that is to say, if there had been no such rise in the river as to surround these buildings with water the wind could not possibly have driven the water against them so as to cause the damage.

But in this case it is not a question of proximate cause; the parties must be bound by the terms of their contract. Certainly the injury was not *directly* caused by the windstorm, for if the water had not surrounded the houses the windstorm could not have blown it against them; certainly the flood, which at the time surrounded the houses, was at least *indirectly* the cause of the damage, for if it had not been there it could not have been blown against the buildings.

We are constrained to hold that the loss suffered was not embraced in or contemplated by the contract of insurance; it is apparent from the situation of these buildings along the Ohio River in a territory subject to overflow, that the parties had in mind and contracted with reference to the very situation which arose, viz.: the loss by water being driven by the wind during a flood against the houses.

We are of opinion that the lower court should have directed a verdict for the appellants as they asked, and the judgments are each therefore reversed for a new trial, and for further proceedings consistent herewith.