## PENNSYLVANIA FIRE INSURANCE CO. v. SIKES.

No. 31901. April 23, 1946.

Rehearing Denied May 14, 1946.

*168 P. 2d 1016.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for plaintiff in error.

Jerome Sullivan and Paul D. Sullivan, both of Duncan, for defendant in error.

WELCH, J. Sikes, as plaintiff, sought to recover for damages to his household belongings and his truck alleged to have been sustained by windstorm. He alleged liability of the defendant under two policies of insurance issued by the defendant company and in force at the time of the damage.

Defendant answered by general denial and alleged failure to furnish proof of loss, and further alleged that if any loss or damage was sustained by plaintiff, the same was proximately caused by flood, which is a hazard not insured against by the policies and is expressly excluded from the terms of the policies.

The policy covering the household effects contains the following:

"This company shall not be liable for any loss or damage caused by snowstorm, blizzard, frost or cold weather; . . . nor for loss or damage occasioned **directly or indirectly by or through any**

explosion, tidal wave, high water, overflow, cloudburst, theft; nor for any loss or damage, caused by water or rain, whether driven by wind or not, unless the building insured, or containing the property insured, shall first sustain an actual damage to the roof or walls by the direct force of the wind, and shall then be liable only for such damage to the interior of the building or the insured property therein, as may be caused by water or rain entering the building through openings in the roof or walls made by the direct action of the wind, or by water from sprinkler or other piping broken by such damage to roof or walls."

The automobile policy has the following clause:

"Coverage E—Windstorms, Earthquakes, Explosion, Hail or Water Loss of or Damage to the automobile caused by windstorm, earthquake, explosion, hail or external discharge or leakage of water."

—Which is included in the coverage, and also contains the following:

"Coverage F—Combined Additional Coverage Loss of or damage to the automobile caused by windstorm, earthquake, explosion, hail, external discharge or leakage of water, floor or rising waters, riot or civil commotion, or the forced landing or falling of any aircraft or of its parts or equipment."

—Which is excluded from coverage.

From verdict and judgment for plaintiff on both policies the defendant appeals, and asserts:

"To entitle an assured under an insurance policy to recover, he must bring himself within the terms of the policy contract; and proof of conditions which are not covered by the policy will not entitle such assured to recover. Mere conclusions of the plaintiff, unsupported by evidence and contrary to physical facts, do not entitle case to go to jury."

Thereunder defendant insists that the evidence and physical facts establish that the damage was caused by high water and that none of the damage was attributable to windstorm.

We have examined the entire evidence, and though there is sharp conflict therein, we have no doubt that there is sufficient evidence to support the contrary view of the jury on that issue of fact.

Plaintiff's evidence is to the effect that in the afternoon in question there was a severe windstorm and rain; that he rushed to his home in an effort to assist his family, and that just as he reached to open the front door screen of his small 14' x 28' two-room house the same was hurled from its foundations toward and over him; that it was hurled into the street a distance of some 15 or 20 feet with him underneath; that he was protected by a street coping or curb some 18 inches high, and that thereafter the house was carried down the street by some force a distance of some several hundred feet. That at the time the house left its foundation there was no flood water up to the house, though there was some twelve or fifteen inches of flood water in the street where and when the house was deposited therein; that the windstorm was severe at the time the house left the foundation and the house could not have been thus removed except by the force of the wind. His evidence is further to the effect that the windows and doors were blown out and open and that his household effects were moved, displaced, and overturned and some blown away, and that by reason of the house being deposited in flood waters there was also damage from mud and water.

While defendant presented evidence to the effect that the house was located in the area of the lowlands of a small creek or canal, and that the whole area nearby was inundated with flood water and that the house was carried away and the damage caused by the water alone, the jury accepted plaintiff's evidence in that respect, which it had a right to do under the evidence here.

And so it is established as facts in this case that the windstorm lifted the house from its foundation some two or

three feet above the surface of the street, wherein there was then flood water some twelve or fifteen inches deep, and carried the house to the street, where it was subsequently carried a further distance of some 200 or 300 feet by either the flood water or the wind or both, and where it became lodged against a tree. Measurements showed that flood water had arisen in the house to the height of 32 inches at one or some points.

The jury was further justified in finding, as we assume that it did by its general verdict, that plaintiff's household effects were damaged by breakage from the forces accompanying and caused by the abrupt displacement of the house by the wind, and further damaged by the blowing rain which entered the building through the windows and doors which were blown out and open by the wind. It is probably also true that some of the damage was done to the property by the mud and waters of the flood.

The further evidence is that plaintiff's truck was parked in the front yard of the house and in line with the path over which the house was blown, and that after the storm the truck was located about 100 feet away with another house partially resting upon the truck; that it was broken and required $75.70 repairs. What we have said with reference to the house and contents applies equally to the truck.

Defendant says that by virtue of the above-quoted provisions of the policies it is not liable for water damage under the facts here. Citing Coyle v. Palatine Ins. Co. (Tex. Com.) 222 S.W. 973; Newark Trust Co. v. Agricultural Ins. Co., 237 Fed. 788; Palatine Ins. Co. v. Petrovich (Tex. Civ. App.) 235 S.W. 929; Parish v. County Fire Ins. Co., 134 Neb. 563, 279 N.W. 170; and National Union Fire Insurance Co. v. Crutchfield, 160 Ky. 802, 170 S.W. 187. Those are cases wherein the trier of facts found that the damage was caused by flood, or there was no sufficient evidence upon which to base a conclusion that the wind alone was the proximate cause of the damage. The cases would be applicable had the jury here found that the house was removed from its foundations and carried away by the rising flood waters. The jury herein found to the contrary. The Texas cases concern losses occasioned by tidal waves—where great bodies of gulf waters were blown into and against the houses and they were in fact inundated and flooded thereby where they stood upon their foundations. In the Coyle Case it is pointed out that the policy excepted from its coverage damage caused by action of water driven by the wind. Here that damage which may have occurred to plaintiff's property after it had been deposited in the flood waters by the wind was not caused by water driven by the wind. Much the same may be said of the other cited cases. They contain some showing that the damage would not have occurred but for the action of flood waters reaching the property itself before it had been displaced by action of the wind. They merely hold that the proximate and efficient cause of the damage was by flood as commonly known and accepted, and as agreed upon in the contracts of the parties. Here the wind directly damaged the property and was alone the proximate and efficient cause of the same being deposited in the flood waters where it likely was damaged further. We think it would be farfetched to reason that the parties to these contracts would have contemplated such damage to be a flood damage. We have the view that the exceptions above noted in the policies relate to flood damage as commonly known.

In the cited cases the facts were that flood waters were the proximate cause rather than the contributing or incidental cause of the disturbance of the houses, or was a major factor with the wind in making up the initial cause, or agency, which caused the houses to be disturbed and removed from their anchorage. Therein there was flood damage as the proximate cause of the damage as contemplated by the con-

tracting parties. The houses were in fact flooded by bodies of water which flood water caused or was an efficient element in the cause of the entire disturbance of the houses.

In the present case neither the house nor the truck was affected by the flood water until the wind had blown them from their sites and anchorage. Whatever flood damage may have resulted thereafter was incidental, and a somewhat logical sequence to the wind disturbance. No unusual or unexpected thing occurred thereafter to cause the water damage. Common experience and understanding suggest that when personal property of this nature is blown into a body of water, some water damage will likely result before the property can be recovered. It is fair to assume that under these facts this incidental water damage was within the terms of the policies and contracts of the parties at the time they were made.

We think the distinction we have pointed out as relates to the cited cases is clear and appropriate, and that our conclusion is supported by sound reason, and no authorities have come to our attention which we consider as contrary to our views. We consider our conclusion supported by Russell v. German Fire Insurance Co., 100 Minn. 528, 111 N.W. 400, and the authorities found therein. In that case a building had been gutted by fire. Some of the brick walls were left standing, but unsupported by the building as a whole. Several days thereafter a strong wind (which might be reasonably expected to occur in that area) blew one of the walls down and upon plaintiff's building which was insured against loss by fire, and plaintiff sought damages against the insurance company for loss by fire, and plaintiff sought damages against the insurance company for loss by fire. No fire occurred in plaintiff's building. Therein the Minnesota Supreme Court discusses at length the meaning of the phrase "proximate cause" and kindred expressions and in upholding plaintiff's right of recovery held in the five paragraphs of the syllabus as follows:

"Respondent's three-story building, 39 feet high, was insured in appellant company from loss or damage by fire. Fire consumed the interior of an adjacent five-story brick building, leaving an unsupported brick wall standing, 69 feet high and 175 feet long. Seven days thereafter a strong wind arose, during which time the wall fell upon respondent's building, causing damages, to recover which this action was brought. Held, that the words, 'and in no case to include loss or damage by cyclone, tornado, or windstorm,' in a 'lightning clause,' attached as a rider to the policy, are limited to the rider, and do not apply to or vary the contract as contained in the policy.

"The evidence is sufficient to justify the finding that the wind was one liable to occur during any month in any season of the year.

"It is not necessarily the last link in the chain of events which constitutes proximate cause, but that which is the procuring, efficient, and predominant cause; that from which the effect might be expected to follow, without the concurrence of any unforeseen circumstances.

"If, under all the circumstances, the parties to the contract of insurance could have reasonably foreseen that a fire might leave the adjacent wall unsupported, subject to the action of such wind, and that it might be blown over and fall upon the insured building, such contingency was an element in the risk.

"Under the evidence in this case the cause of the damage was a question of fact, and the evidence sustains the finding of the trial court that the fire, and not the wind, was the proximate cause."

The defendant further urges that the court erred in giving certain instructions. No. 3-A is in accord with our conclusion above announced. No. 4 is urged as error. It is as follows:

"On the other hand, if you find from a preponderance of the evidence, that the damage sustained to said furniture and truck was wholly the result of flood waters, then you should find for the defendant on plaintiff's 1st and 2nd causes of action."

It is said that such instruction placed the burden of proof upon the defendant contrary to law. The issues of fact in this case were few and simple. The vital fact issue was whether the house was blown into the street and water, or whether it floated away upon the flood waters. The instructions as a whole were to the effect that the burden was upon the plaintiff to prove loss within the terms of the policy. We find no cause to suspect that the jury was misled by the instructions or that defendant was prejudiced thereby.

Affirmed.