## HOME INS. CO., NEW YORK, v. SHERRILL.

No. 12507.

United States Court of Appeals
Fifth Circuit.

June 16, 1949.

Rehearing Denied July 30, 1949.

R. A. Wallace, Gulfport, Miss., for appellant.

S. E. Morse, Gulfport, Miss., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Appellee, Mrs. H. V. Sherrill, sued appellant for $7,500, plus an agreed adjustment for unearned premium, on a policy insuring her to that amount on a building on the water front of the Gulf of Mexico in Biloxi, Mississippi, against direct loss by windstorm. The policy also provided: "This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) snowstorm, tidal wave, high water or overflow, whether driven by wind or not." The pleadings admitted, by not denying, that the building was totally destroyed in a hurricane on Sept. 19, 1947, the defense relied on being that the high water caused the loss or contributed to it. The trial was had under a stipulation reading in part: "It is agreed * * * that the property that was covered by the insurance for which this suit is brought was owned by Mrs. H. V. Sherrill and that the property was destroyed, and was of the value of $7,500 or more; the issues on the merits being solely as to whether or not the company is liable under the facts to be developed on the trial of the case."

The only error for consideration is the refusal to direct a verdict for the defendant at the termination of the evidence on the ground that the evidence demanded a conclusion that the destruction of the building was due solely to high water, whether driven by the wind or not, or by the combined force of wind and water; and that the high water was at least a contributing cause, and there was no evidence as to how much of the damage was due to the water.

The evidence is in considerable conflict, coming from a number of eyewitnesses. Mrs. Sherrill testifies that she was in the hotel across the street in plain view in the early morning of the storm while the wind was from the east and before it shifted to the south and raised great waves which came over the seawall; the water was already high though not rough, and had reached the floor of her building, a large one-story frame structure. She saw the roof blow off and away, and then the walls collapsed and the building was wrecked before the water rose to the window sills or the waves began to beat. The night watchman who was in the building testifies that after daylight the building began to shake and he telephoned his employer; then the back wall blew out and part of the roof blew off, and he fled across the street to the hotel wading through water, but that the floor of the building he had left was still dry. Within ten minutes after he reached the hotel he saw the main roof carried away by the wind, the walls collapse, and the building fall in ruins. He testifies positively the wind blew it down, and the water had then not dashed against it. Many witnesses testified to the general havoc created by

wind and water within a few hours all along the water front. Appellant had many photographs made and measurements taken of the height reached by the still water and the waves, tending to show force of and destruction by both water and wind. In view of the testimony first above mentioned it was, as the trial judge held, a question of fact whether the building was destroyed by the direct and sole action of the wind before the water was high enough and rough enough to contribute thereto. By the initial agreement the amount of the loss equalled or exceeded the insurance, and the only issue to be tried was liability. There is no complaint of the court's charge to the jury. We will not split hairs as to whether the water rather than the wind did some minor damage to the debris after the building collapsed, as to the amount of which there was no evidence. The trial agreement above quoted invited a contest for $7,500, all or none, and the case was tried that way.

Judgment affirmed.