186

LOYOLA UNIVERSITY v. SUN UNDER-
WRITERS INS. CO. OF NEW YORK.
Civ. No. 2160.

United States District Court
E. D. Louisiana, New Orleans Division.
June 23, 1950.

Charles I. Denechaud, Charles I. Denechaud, Jr., John T. Charbonnet, all of New Orleans, La., for plaintiff.

Arthur A. Moreno, & Martin Hunley, Jr., New Orleans, La., for defendant.

WRIGHT, District Judge.

## Findings of Fact

I. The plaintiff, a corporation organized under the laws of the State of Louisiana, brings this action against the defendant, Sun Underwriters Insurance Company of New York, to recover for the damage to and loss of property which was insured under a contract of insurance issued by the defendant to the plaintiff. The provision of the policy sued on reads as follows: "Recovery of this policy is intended to include the direct loss or damage by windstorm * * * and loss of use (rental value) on building items."

The policy further provides that the company shall not be liable for " * * * loss or damage occasioned directly or indirectly by or through any tidal wave, high water, overflow, cloudburst, theft; nor for any loss or damage caused by water or rain, whether driven by wind or not, unless the building insured or containing the property insured, shall first sustain an actual damage to the roof or walls by the direct force of the wind, shall then be liable only for such damage to the interior of the building or the insured property therein as may be caused by water or rain entering the building through openings in the roof or walls made by the direct action of the wind, or by water from sprinkler or other piping broken by such damage to roof or walls."

There is an additional item of damage amounting to $2,000.00 covering damage to the wharf leading to the main building insured about which there is no contest since defendant admits that this particular damage is covered by the so-called "wave-wash" provision of the policy.

II. The property covered by the policy in suit is the main building of a camp built on piling over water having a mean elevation above sea level of approximately one foot, together with auxiliary buildings, including a caretaker's house, a boat and bathhouse, and four outbuildings consisting of a one-story frame laying house, a one-story frame pullet house, and two one-story chicken houses.

III. The damage to the property in question occurred some time September 19, 1947 when a hurricane struck the Shell Beach-Yscloskey area in the Parish of St. Bernard, Louisiana, where the insured property is located. The United States Weather Bureau, in its report entitled "The Hurricane of September 19, 1947 in Mississippi and Louisiana" establishes the following facts concerning the hurricane:

1. The Loyola property was seven miles north of the path of the center of the hurricane, and the area of greatest duration of hurricane force winds was five miles north of the Loyola property.

2. In the area which had the greatest duration of hurricane force winds, the wind velocity was from 93 to 115 miles per hour, and the wind velocity in the area of Loyola property was in the vicinity of 100 miles per hour.

3. Winds of hurricane force reached Shell Beach at 5:30 A. M. and the hurricane center passed over the area at 8:30 A. M. The wind direction prior to 8:30 A. M. at the Loyola property was from north through east to south. After the hurricane center passed the wind direction shifted to the southeast.

4. The water began to rise at 7:30 A. M. in the area of Bay St. Louis, Mississippi, a distance of thirty miles northeast of Shell Beach and reached its highest level at Bay St. Louis two and a half hours later. The water began to rise while hurricane winds from the northeast were being experienced in the area.

IV. At 8:00 A. M. the water in the Shell Beach area had not reached the elevation of 4.3 feet above sea level; at 9:00 A. M. the water had reached an elevation of 7.87 feet above sea level; at 12:00 noon the water had reached an elevation of 9.7 feet above sea level, and in the afternoon the water reached its maximum elevation of 11.2 feet above sea level.

V. The elevation of the floor of the main building of the Loyola property is

12.2 feet above sea level. The elevation of the boat—and bathhouse, situated north of the main building on piling over water, is approximately the same as the elevation of the main building. The caretaker's house and the outbuildings were built on land adjoining the wharf leading to the main building.

VI. The boat—and bathhouse and its contents were demolished by the wind prior to 8:00 A. M.; the outbuildings and their contents were also destroyed by the direct action of the wind of hurricane force.

VII. The main building of the Loyola property and the caretaker's house were wracked by the hurricane force winds. The screened porch north of the caretaker's house and the roof to the garage attached thereto were damaged by the direct action of the wind, and the wind tore and loosened parts of the roofing on the main building, causing openings through which quantities of water entered, damaging the ceiling, walls, floors and contents of the building. The wracking of the main building caused the piling under the bearing walls to subside, forcing the porches to slope in the direction of the building. This wracking also cracked and ruptured the concrete casings around the piles supporting the building.

VIII. The plaintiff was deprived of the use of its property as a result of the hurricane damage from September 1947 to June 1948, the restoration of the premises being retarded by the inaccessibility of the property, the destruction of a bridge on the road to the property, and the negotiations between plaintiff and defendant prior to commencement of the repairs. Since the buildings damaged by the wind were used primarily as a summer camp, damages for deprivation of the use during the months in question are relatively small.

IX. An itemization of the damage to the property insured by direct action of the wind follows:

MAIN BUILDING

| | | |
|---|---|---:|
| 1. | Replace Wire on porches.... $ | 56.70 |
| 2. | Replace Screen Moulding.... | 168.75 |
| 3. | Reset screen panel—2nd floor Porch .................. | 9.63 |
| 4. | Screen windows ........... | 46.55 |
| 5. | Wire screen on four doors— first floor ............... | 24.05 |
| 6. | One pair of outside screen doors—first floor ........ | 44.95 |
| 7. | Two screen doors—1st floor.. | 44.95 |
| 8. | Refinish floors: 2nd floor.... | 317.52 |
| | Chapel .... | 32.40 |
| 9. | Repair porch floor—Nailing floor ................... | 320.95 |
| 10. | Living Room ceiling—New board ................... | 196.01 |
| 11. | Living Room walls—New board ................... | 285.30 |
| 12. | Glass window pane........ | 5.89 |
| 13. | Renail iron on Roof ........ | 128.38 |
| 14. | Nails—common ........... | 2.68 |
| 15. | Sheetrock ................. | 4.01 |
| 16. | 3/4 Galvanized bolts ........ | 21.83 |
| 17. | Painting (at 10¢ per square foot plus 10% plus 25%) | |
| | Seven bedrooms—ceilings... (364 square feet) | 50.05 |
| | Seven bedrooms—walls (290 square feet) ............ | 39.87 |
| | Chapel—ceiling (176 square feet) ................. | 26.61 |
| | Upstair's hall—ceiling (327 square feet) ............ | 44.96 |
| 18. | Clearing debris ........... | 80.24 |
| 19. | Plumbing: | |
| | Septic Tank .............. | 200.00 |
| | Balance of plumbing in main building ................ | 287.20 |
| 20. | Electrical Work | |
| | Above floor of main building | 309.37 |
| | Service from shore to building | 526.67 |
| 21. | Hardware ................ | 52.17 |
| 22. | Platform for Septic Tank.... | 165.00 |
| 23. | Electric Rotary Pump & Reservoir for Main Building— Installed in Boat house.... | 439.99 |
| 24. | Petrolane Tank on Land attached to by pipe and serving main building........ | 305.53 |
| 25. | 1″ WI. Service Pipe for Petrolane tank from land tank to building.............. | 138.08 |
| 26. | Leveling building (Sunk in center) ................. | 1,344.30 |
| 27. | Concrete base around 35 pilings under main building.. | 1,012.64 |
| | Main Building Total.... | $6,733.23 |

## BOAT AND BATH HOUSE

1. Boat and Bath House
   Labor ...................... $ 522.29
   Material—Special .......... 33.29
   Material—Other .......... 1,108.42
2. Shed attached to Boat House 134.77
3. Wharf by Boat House
   Material—Special .......... 62.42
   Labor ...................... 249.88
4. Pier to boathouse from main building ................. 250.00
5. Straightening pilings for walkway from main building to boat house—7 bays.. 275.18
6. Stairs platform ............ 16.65
7. Cradle and Hoist for boat.... 485.48
8. Demolish existing damaged material ................. 105.41
9. Stairs ...................... 73.91
10. Plumbing in Bath and Boat House ................. 242.00
11. Nails—Common ........... 24.27
12. Galvanized bolts ........... 217.64
13. Roofing for Bath and Boat House ................. 55.48
14. Drift Pins ................. 85.43
15. Lightning Rod ............. 69.35
16. Hardware ................. 62.42
17. Low platform to Boat House 104.72

Boat and Bath House
Total .............. $4,179.01
(Extent of coverage for boat and bath house under policy ........ $3,800.00)

## CARETAKER'S HOUSE & GARAGE

1. Platform under house....... $ 82.50
2. 3' x 6' screen door.......... 21.21
3. General Repairs............ 92.83
4. 8' wide wood folding doors.. 355.89
5. New Beaver board wall & ceiling ................. 303.69
6. Creosote wood posts to relevel sills ..................... 62.80
7. Screening porch ........... 30.78
8. Garage ..................... 280.43
9. Basement girts—realigning only ..................... 92.83
10. Galvanized iron siding ...... 248.26
11. Chicken wiring ............ 33.69
12. Porch repairs .............. 16.31
13. New Porch shed ........... 59.99
14. Roofing for porch ......... 28.47
15. Steps on house ............ 91.23
16. Lumber ................... 241.09
17. Nails ..................... 24.91
18. Shoring porch and roof ..... 20.63
19. Electrical ................. 35.59
20. Hardware ................. 20.67

Caretaker's House & Garage Total ........ $2,143.80

## OUTBUILDINGS

1. Chicken House (Item 9 of Policy) ................. $ 908.79
2. Hen House (Item 13 of Policy) ..................... 596.95
3. Brooder & Pullet House (Item 11 of Policy)....... 669.37
4. Storage or Chicken House (Item 13 of Policy)........ 606.92

Out Buildings Total.... $2,782.03
(Extent of coverage under policy for out buildings $1,300.00)

Contents of Boat and Bath House $ 675.01
(Extent of coverage for contents of boat and bath house under policy $500.00)

Contents of First Hen House.... $ 130.00
Contents of Second Hen House.. $ 120.00
(Extent of coverage under policy for contents of this hen house ...... $110.00)

Loss of use of Main Building for Nine Months at $75.00 per month ................... $ 675.00

Loss of use of Boat & Bath House for Nine months at $20.00 per month .............. $ 180.00

### Conclusions of Law

1. A contract of insurance is like any other contract. Where no ambiguity or doubt exists, it is to be enforced like any other contract, as written. It is the law between the parties and is the measure of their rights and responsibilities. Wallace v. Insurance Co., 4 La. 289; Dorsett v. Thomas, 152 La. 60, 92 So. 734; Parks v. Hall, 189 La. 849, 181 So. 191; Hemel v. State Farm Mutual Auto Insurance Co., 211 La. 95, 29 So.2d 483; Cotton Bros. Cypress Co., v. Home Insur-

ance Co., 147 La. 308, 84 So. 792; Louisiana Civil Code, Art. 1901.

2. The burden of proof rests on the plaintiff to establish by a preponderance of evidence the facts upon which relief is sought. These facts may be established by direct and circumstantial evidence and the opinions of expert and skilled witnesses.

3. Under the policy sued on the plaintiff is entitled to recover for all direct loss or damage caused by the hurricane winds and for all loss or damage caused by water or rain to the interior of the property and the contents thereof where such water or rain entered the property through openings in the roof or walls made by the direct action of the wind.

4. Where the insured produces an eye witness whose testimony proves that the wind, and not the waves, destroyed the insured property, proof is made of damage or destruction coming within the coverage of the policy, but where a witness testifies only to seeing a part of the insured property destroyed by the wind, that is not full proof of destruction of the other property by the wind, but such testimony is evidence to be considered with the other evidence in the case. Ebert v. Pacific National Fire Insurance Co., La.App., 40 So.2d 40; Pennsylvania Fire Insurance Co. v. Sikes, 197 Okl. 137, 168 P.2d 1016, 166 A.L.R. 375; Home Insurance Co. v. Sherrill, 5 Cir., 174 F.2d 945.

5. If the cause of the damage or destruction be not the direct result of the wind alone, but the damage or destruction be caused by a combination of wind and water, and the damage by either cannot be separated, then, there can be no recovery under the policy, because the insured bears the burden of proving the cause of the damage, and if it fails to make that proof, it cannot recover. National Fire Insurance Company v. Crutchfield, 160 Ky. 802, 170 S.W. 187, L.R.A.1915B, 1094.

6. The loss or damage to plaintiff's property as set out in Findings of Fact No. IX was the direct result of wind or of water which entered the property through openings in the roof or walls of the property which were caused by the wind. Pennsylvania Fire Ins. Co. v. Sikes, 197 Okl. 137, 168 P.2d 1016, 166 A.L.R. 375; Ebert v. Pacific Nat. Fire Ins. Co., La.App., 40 So.2d 40.

Let the plaintiff prepare a judgment in accord with these findings.