**Jim KELLY and Elaine Kelly, husband and wife, Plaintiffs,**

v.

**FARMERS INSURANCE COMPANY, INC., a foreign corporation, Defendant.**

**No. CIV–02–153–M.**

United States District Court, W.D. Oklahoma.

Sept. 12, 2003.

Steven S. Mansell, Mark A. Engel, and Steven S. Ashmore, all of whom are with the firm of Mansell, Engel & Ashmore, Oklahoma City, OK, for Plaintiffs.

REric S. Eissenstat, and Jay P. Walters, both of whom are with the firm of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, for Defendant.

### *ORDER*

MILES–LAGRANGE, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment. The motion has been fully briefed and is now ripe for determination. For the following reasons, Defendant's motion is denied.

### I.  Background

The following facts are essentially undisputed by the parties. Plaintiffs Jim and Elaine Kelly, husband and wife, own a home in Norman, Oklahoma. At all times relevant to this litigation, the Kellys' home was insured by Defendant Farmers Insurance Company, Inc. ("Farmers"). Specifically, the Kellys' home was insured under a Protector Plus Homeowners Package Policy (policy no. 90362–35–60) (the "Policy").

In the summer of 2001, Elaine Kelly entered the closet of an unoccupied bedroom in the home and was surprised to find that mold was growing on the walls and that the carpeting was wet. Mrs. Kelly immediately contacted Farmers, which responded by sending an adjuster, Bill Baker, to assess the cause and scope of the apparent water damage, and to determine if the Kellys' Policy covered the

loss. It was eventually decided that the water damage resulted from the rupturing of sillcock pipes in the walls of the home; it was also decided that the pipes ruptured because of freezing the prior winter. Farmers authorized coverage for the claim and instructed Mrs. Kelly to repair the damage as soon as possible.

Shortly after the Kellys received their first estimate on the repairs, but before any repair or clean-up work had begun, Mrs. Kelly noticed extensive water damage, including mold, in a second unoccupied bedroom which adjoins the room where the initial water damage was discovered. The Kellys informed Farmers of the additional water damage and Farmers again responded by sending Baker to investigate. This time, Baker conducted a more thorough inspection of the home. Baker's inspection revealed that in addition to the two unoccupied bedrooms, the Kellys' bedroom was also affected by the water damage, as mold was growing along the lower part of the Kellys' bedroom wall, behind the furniture.

Baker concluded that the ruptured pipes likely caused all of the water damage in the home and authorized coverage for the repairs. In addition, Baker circumscribed the scope of coverage by listing several remediation-related tasks, the completion of which was deemed necessary to adequately repair the property damage and prevent the spread of the mold. The tasks included: restoration of the interior plumbing, replacement of sheetrock, application of a sealant under the carpeting, and steam cleaning of the affected carpeting.

The Kellys hired contractors Scott Gaede ("Gaede") and Aladdin Carpet Cleaning ("Aladdin")[1] to perform the repair and clean-up tasks identified by Farmers. Both Gaede and Aladdin were finished by early fall, 2001. Farmers paid for the repair and clean-up work and closed the Kellys' claims file.

In late fall/early winter, 2001, the Kellys grew suspicious that the mold problem had not been completely eliminated. Jim Kelly underwent surgery for gastro-esophageal reflux in early August of 2001. Mr. Kelly's recovery was severely hampered by respiratory problems and fatigue, but his doctors were unable to diagnose the cause. The Kellys finally consulted a neighbor and family friend, who also happened to be a retired physician, about Mr. Kelly's unusually slow recovery. The neighbor, Dr. Tinsley, suggested that mold may be the root of the problem. Dr. Tinsley allegedly sent hair samples from Mr. Kelly to a toxicology lab, and after receiving the lab results, informed Mr. Kelly that he had dangerous levels of mold in his system.[2] Dr. Tinsley advised the Kellys to leave their home as soon as possible.

In mid-December of 2001, the Kellys contacted Farmers regarding their mold-related suspicions. Farmers sent adjuster Jeff Williams to investigate the claim. Although mold was not visible upon inspection, testing revealed that the Kellys' home was infested with mold. Soon after the test results were received, in a letter dated January 20, 2002, Farmers denied the Kellys' claim for mold-remediation coverage pursuant to the mold-exclusion provision in the Policy. The Kellys left their home in January of 2002 at the suggestion of Dr. Tinsley. They have not returned.

1. Farmers neither referred nor supervised either of the contractors.

2. Elaine Kelly also suffered from respiratory problems and fatigue during the fall and early winter of 2001. Although she was never diagnosed with any mold-related illness, Mrs. Kelly attributes her infirmities to mold exposure.

The instant action was filed on February 6, 2002. The Complaint consists of two counts: (1) bad faith refusal to investigate and pay the mold-remediation claim filed in December of 2001, and (2) fraudulent non-disclosure regarding the health risks associated with mold exposure. Farmers moves the Court for summary judgment as to both claims. Though Farmers advances several arguments in support of its motion, it relies primarily on the Policy's mold-exclusion provision.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (2003). The summary judgment standard contemplates two distinct burdens of proof. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). First, "the moving party must meet its 'initial responsibility' of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir.2002). If the moving party fails to produce sufficient evidentiary support to satisfy this "initial responsibility," summary judgment is inappropriate *"even if no opposing evidentiary matter is presented." Id.* (citations omitted) (emphasis in original). If, on the other hand, the moving party satisfies its "initial responsibility," the non-moving party " 'must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof.' " *Simms*, 165 F.3d at 1326 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir.1996)). The nonmovant must present more than a mere "scintilla" of evidence to satisfy its burden of demonstrating that the dispute is in fact *genuine.*

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Simms*, 165 F.3d at 1326 (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir.1997)).

The determination as to whether facts are material must be made by reference to the substantive law applicable to the case. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In the application of the foregoing standard, the court examines "the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir.1998).

## III. Discussion

### A. Bad Faith Claim

Farmers asserts that it is entitled to summary judgment on the Kellys' bad faith claim because the unambiguous Policy language excludes coverage for mold. In the alternative, Farmers argues that it was justified in disputing the Kellys' claim as a matter of law because the mold-coverage issue in this case has not been addressed previously by any Oklahoma court.

#### 1. Bad Faith Standard

■ In Oklahoma, all insurers owe their insureds an implied "duty to act fairly and in good faith." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611 (10th Cir.1994) (citing *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla.1977)). A breach of that duty may give rise to liability in tort. *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (citing *Christian*, 577 P.2d at 904).

The tort of bad faith is founded on the proposition that

> [a] claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient. The decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that there was a justifiable reason for withholding payment under the policy. To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable.

*Willis,* 42 F.3d at 611–12 (internal citations and quotations omitted).

■ Oklahoma courts have long recognized that a bad faith cause of action "will not lie where there is a legitimate dispute" as to the sufficiency of the insured's claim. *Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760, 762 (Okla.1984). As a consequence, in order to succeed on a bad faith claim, "the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment . . . ." *Oulds,* 6 F.3d at 1436.

In the context of a motion for summary judgment filed by the insurer, mere allegations of bad faith conduct are insufficient to present a jury question. *See Willis,* 42 F.3d at 612 (citing *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.,* 804 P.2d 463, 468 (Okla.App. Div. 1 1990)). "A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *Oulds,* 6 F.3d at 1436 (citing *City Nat'l Bank & Trust Co.,* 804 P.2d at 468). Thus, in order to justify submission of the issue to the jury, the trial court must make a pre-

liminary finding, as a matter of law, that the insurer's conduct may be "reasonably perceived as tortious." *Id.* at 1436–37 ("Unless the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.").

### 2. Contractual Interpretation

Farmers maintains that the mold-exclusion provision in the Kellys' Policy unqualifiedly precludes insurance coverage for mold claims. The following Policy provisions are at issue:

LOSSES INSURED

Coverage A—Dwelling

Coverage B—Separate Structures

We insure for accidental direct physical loss to property described in Coverage A and B, except as provided in Section I—Losses Not Insured.

Coverage C—Personal Property

We insure for accidental direct physical loss to property described in Coverage C, but only if caused by one or more of the following perils:

. . . . .

15. Freezing of a plumbing, heating, air conditioning system or household appliance. This peril does not include loss on the residence premises while the dwelling is unoccupied *unless* you have used reasonable care to:

a. maintain heat in the building, or

b. shut off the water supply and drain the system and appliance of water.

. . . . .

SECTION I LOSSES NOT INSURED

Applying to Coverage A and B—Dwelling and Separate Structures and Coverage C—Personal Property

We do not insure for loss either consisting of, or caused directly or indirectly by:

. . . . .

2. Water Damage [3]

Acts or omissions of persons can cause, contribute to or aggravate water damage. Also water damage can occur naturally to cause loss or combine with acts or omissions of persons to cause loss. Whenever water damage occurs, the resulting loss is always excluded under this policy; except we do cover:

. . . . .

2. loss or damage to the interior of any dwelling, mobile home or separate structures, or to personal property inside the dwelling, mobile home or separate structures caused by water damage if the dwelling, mobile home or separate structures first sustain loss or damage caused by a peril described under Section I—Losses Insured—Coverage C.

. . . .

13. . . .

d. rust, mold, wet or dry rot . . . .

Ex. 1 to Def.'s Mot. for Summ. J. at 7, 9, 10.

Farmers points to the Policy language excluding from coverage "loss either consisting of, or caused directly or indirectly by: . . . mold," and argues that this language operates to completely eliminate all potential liability for mold-related loss. Under Oklahoma law, "[t]he terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." *Dodson v. St.*

*Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). Exclusions from coverage

> are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy. Thus, subsequent exclusions can further limit or even remove a covered risk from the general declaration of insurance coverage. In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer.

*Id.* at 377.

Farmers asserts that this dispute can be easily resolved through contractual interpretation. In this connection, Farmers contends that the mold-exclusion provision is "unambiguous, clear, and consistent" with the Policy as a whole, and urges the Court to enforce the exclusion as written. Farmers also emphasizes the fact that the mold exclusion sequentially follows the provision authorizing coverage for water damage resulting from "freezing of a plumbing . . . system," and argues, therefore, that the mold exclusion specifically negates any potential liability for mold-related losses caused by such water damage.

The Kellys do not question the clarity of the mold-exclusion provision per se, but they nevertheless disagree with the proposition that this case turns on contractual interpretation. Instead of the Policy language, the Kellys emphasize the factual circumstances that gave rise to the ultimate loss. Specifically, the Kellys contend that the relevant inquiry is whether the property loss was *proximately* caused by a covered peril. If so, they argue, coverage

---

**3.** This language is taken from the H6104 1st Edition Endorsement Amending Section I—Losses Not Insured—Water Damage, which is attached to the Policy, *see* Ex. 1 to Def.'s Mot. for Summ. J., and which the parties agree was in effect at all times relevant to this action. *See* Lashley Dep. at p. 100, 1. 8–16, Ex. 8 to Pls.' Resp.

exists notwithstanding the fact that an excluded peril may have indirectly contributed to the loss.

The Kellys' position is premised on the doctrine of efficient proximate causation. *See* Douglas G. Houser & Linda M. Bolduan, *Mold: Another Four–Letter Word Every Coverage Attorney Needs to Know*, 38 TORT TRIAL & INS. PRAC. L.J. 15, 16 [4] (2002) [hereinafter *Mold: Another Four–Letter Word*] (explaining the efficient proximate cause doctrine as follows: "[w]here a covered peril is the efficient proximate cause of the loss, there is coverage. But, where an excluded peril is the efficient proximate cause of the loss, coverage is denied"). The efficient proximate cause doctrine, if applicable in this case, will unquestionably influence the Court's bad faith analysis. Therefore, the Court must first determine if the efficient proximate cause doctrine has been adopted in Oklahoma; once that determination has been made, the Court will, if necessary, consider whether the Policy language at issue modifies the impact of the doctrine in this case.

*3. Efficient Proximate Cause Doctrine*

■ The efficient proximate cause doctrine applies only when two or more identifiable causes, at least one of which is covered under the policy and at least one of which is excluded, contribute to a single property loss. *See Mold: Another Four–Letter Word, supra,* at 16. When the "insured [cause] sets [one or more excluded] causes in motion in an unbroken sequence between the insured risk and the ultimate loss ... the insured risk is regarded as the proximate cause of the entire loss, even if the last step in the chain of causation was an excepted risk." *TNT Speed & Sport Center, Inc. v. American States Ins. Co.,*

114 F.3d 731, 733 (8th Cir.1997). If the insured successfully demonstrates that the proximate cause of the loss is covered, the entire loss is covered notwithstanding the fact that an event in the chain of causation was specifically excluded from coverage. *See Bowers v. Farmers Ins. Exch.,* 99 Wash.App. 41, 991 P.2d 734, 738 (2000).

*a. Efficient Proximate Cause Doctrine in Oklahoma*

A review of the pertinent case law reveals that Oklahoma has adopted the efficient proximate cause doctrine. *See Shirey v. Tri–State Ins. Co.,* 274 P.2d 386, 388–89 (Okla.1954); *Pennsylvania Fire Ins. Co. v. Sikes,* 197 Okla. 137, 168 P.2d 1016, 1019–20 (1946); Mark D. Wuerfel & Mark Koop, *"Efficient Proximate Causation" in the Context of Property Insurance Claims,* 65 DEF. COUNS. J. 400, 406 (1998) [hereinafter *"Efficient Proximate Causation"*] (recognizing Oklahoma as one of 29 States that follow the efficient proximate cause doctrine, and citing *Shirey* and *Sikes* ). The Oklahoma Supreme Court's most recent pronouncement on the doctrine came in *Shirey v. Tri–State Ins. Co.* In that case, the court considered a coverage dispute involving a claim of automobile damage sustained during a windstorm. *See Shirey,* 274 P.2d at 387. The insured's policy covered losses caused by windstorms but excluded losses caused by "collision or upset." The damage to the car was indisputably caused by upset, as the car had flipped over in a ditch. However, it was clear that the upset resulted from the windstorm. *See id.* Rejecting the insurer's argument that the "upset" exclusion precluded windstorm coverage, the court first cited and then relied on the general rule that "the insured may recover if the windstorm was the efficient and

**4.** Publication page references are unavailable for this article. Therefore, for purposes of this Order, the second page of the printed copy will be designated as page 16, the third page of the printed copy will be designated as page 17, and so on.

proximate cause of the damages to the property insured, and it is immaterial that the damage may have been incidentally and indirectly contributed to by other causes expressly excluded from coverage." *Id.* at 388.

Farmers raises two arguments in an effort to distinguish *Shirey* and *Sikes* and avoid application of the efficient proximate cause doctrine. First, Farmers points out that the insurance policies at issue in *Shirey* and *Sikes* are materially different from the Kellys' Policy, and cites the rule that "cases construing policy coverage are not authoritative if they do not involve the same language or the same version of the standard form embodied in the policy under consideration." *Hartford Accident & Indem. Co. v. Pacific Mut. Life Ins. Co.,* 861 F.2d 250, 252 (10th Cir.1988). Second, Farmers argues that *Shirey* and *Sikes* are distinguishable to the extent that they involve losses resulting from the combination of a "covered cause" and an "excluded cause," whereas this case involves an "excluded loss."

Both arguments are unpersuasive. First, Farmers' contention that the efficient proximate cause doctrine is only applicable in cases involving the same policy language at issue in the cases that previously applied the doctrine is specious and unsupported by authority. The word "doctrine" is defined as "[a] principle, esp. a legal principle, that is widely adhered to." BLACK'S LAW DICTIONARY 496 (7th ed.1999). The word "principle" is defined as "[a] fixed or predetermined policy or mode of action." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1088 (3d ed.1997). Given these definitions, there can be little question that the efficient proximate cause *doctrine,* like all legal doctrines, is applicable in a variety of factual situations. Indeed, the efficient proximate cause doctrine has been described as "the all but

universal method used in the United States for resolving coverage issues involving the concurrence of covered and excluded perils." *"Efficient Proximate Causation", supra,* at 400. While it is true that certain coverage determinations that are conditioned on the language of the policy are not binding with respect to cases involving different policy language, *see Hartford,* 861 F.2d at 252, that rule is simply malapropos in the context of a broadly applicable doctrine of coverage analysis.

Farmers' second argument is premised on its mischaracterization of mold as a "loss" as opposed to a "cause." The efficient proximate cause doctrine applies only in situations where multiple "causes" contribute to a loss. *See Shirey,* 274 P.2d at 388; *TNT,* 114 F.3d at 733; *Cooper v. American Family Mut. Ins. Co.,* 184 F.Supp.2d 960, 962 (D.Ariz.2002); *Schroeder v. State Farm Fire & Cas. Co.,* 770 F.Supp. 558, 561 (D.Nev.1991); *Mold: Another Four–Letter Word, supra,* at 16; *"Efficient Proximate Causation", supra,* at 400. Farmers acknowledges as much in its reply: "Clearly, where the policy speaks in terms of covered causes and excluded causes, it is only natural for the court to apply a traditional proximate causation analysis in a situation with multiple, potential causes to determine which was the actual cause of the damage." Def.'s Reply at 4. By describing mold as a loss unto itself, Farmers hopes to avoid application of the doctrine completely.

Farmers' description does not comport with the language of the Policy, nor is it consistent with common sense. Under Section I—Losses Not Insured, the Policy provides that "[w]e do not insure for loss either consisting of, or caused directly or indirectly by: ... mold ...." Ex. 1 to Def.'s Mot. for Summ. J. at 9. The words "consisting of" appear to imply that mold may constitute a loss in and of itself,[5] but

---

5.  The word "loss" is defined as "[t]he amount

of financial detriment caused by ... an in-

the words "caused directly or indirectly by" clearly reflect a contractual designation of mold as an independent cause. In addition, the Policy explicitly identifies mold as a "peril." *See id.* at 10. The word "peril" is, by definition, "[t]he *cause* of a loss to person or property." BLACK's LAW DICTIONARY 1159 (7th ed.1999) (emphasis added).

Having determined that the efficient proximate cause doctrine is not restricted in its application to cases involving specific policy language, and that mold is a recognized peril as opposed to a loss in and of itself, the Court next considers whether the doctrine should apply in the case at bar. Farmers acknowledges that "freezing of a plumbing ... system" is a covered peril. The Kellys acknowledge that mold is an excluded peril. Notwithstanding the argument that mold is a loss unto itself, Farmers does not explicitly dispute the possibility that water damage from the ruptured pipes and the formation and proliferation of mold combined to produce the financial loss at issue in this case. Upon consideration of the relevant facts, viewed in the light most favorable to the Kellys, the Court perceives no reason to question the possibility that both perils contributed to the loss. Consequently, the factual predicate for application of the efficient proximate cause doctrine is present. *See Mold: Another Four–Letter Word, supra,* at 16 ("The efficient proximate cause doctrine applies only where there are at least two distinct perils ... which 'could each, under some circumstances, have occurred independently of the other and caused damage.' ") (quoting *Finn v. Continental Ins. Co.,* 218 Cal.App.3d 69, 267 Cal.Rptr. 22, 24 (1990)).

The Court finds, therefore, that the efficient proximate cause doctrine has been adopted as a general principle of Oklahoma insurance law and that in the absence of an exception, to be discussed *infra,* the doctrine is applicable in this case. The Court makes no finding, however, as to whether the water damage from the ruptured pipes constitutes the proximate cause of the Kellys' loss. That question is properly reserved for a jury. *See Shirey,* 274 P.2d at 389; *Sikes,* 168 P.2d at 1020; *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 863 F.Supp. 1226, 1231 (D.Nev.1994); *Murray v. State Farm Fire and Cas. Co.,* 203 W.Va. 477, 509 S.E.2d 1, 12 (1998); *"Efficient Proximate Causation", supra,* at 402.

### b. Contracting Around the Efficient Proximate Cause Doctrine

■ Among the jurisdictions that have adopted the efficient proximate cause doctrine, most permit parties to "contract around" it. *See TNT,* 114 F.3d at 733; *Preferred Mut. Ins. Co. v. Meggison,* 53 F.Supp.2d 139, 142 (D.Mass.1999); *Assurance Co. of Am., Inc. v. Jay–Mar, Inc.,* 38 F.Supp.2d 349, 354 (D.N.J.1999); *Mold: Another Four–Letter Word, supra,* at 27. *But see Murray,* 509 S.E.2d at 15 (holding that policy provision drafted to circumvent efficient proximate cause doctrine conflicts with reasonable expectations of parties and is unenforceable); *Howell v. State Farm Fire & Cas. Co.,* 218 Cal.App.3d 1446, 267 Cal.Rptr. 708, 711–12 (1990) (holding that "property insurer may not limit its liability [by contracting around efficient proximate cause doctrine], since the statutory and judicial law of this state make the insurer liable whenever a covered peril is the 'effi-

sured property's damage, for which the insurer becomes liable." BLACK'S LAW DICTIONARY 956 (7th ed.1999). Both common sense and the dictionary definition of the word "loss" dictate that there must be some financial det-

riment in order for a loss to exist. To that extent, then, mold is always a "cause" of a loss, even if the corresponding financial detriment *consists* solely of mold-related property damage.

cient proximate cause' of the loss, regardless of other contributing causes"); *Safeco Ins. Co. of Am. v. Hirschmann,* 112 Wash.2d 621, 773 P.2d 413, 414 (1989) (holding that parties may not contract around efficient proximate cause doctrine). In *Shirey,* the Oklahoma Supreme Court does not directly hold, but does appear to suggest, that contracting around the efficient proximate cause doctrine is permissible. 274 P.2d at 389 (quoting *Fidelity–Phenix Fire Ins. Co. of N.Y. v. Board of Educ. of Town of Rosedale,* 201 Okla. 250, 204 P.2d 982, 984–85 (1948)). The question, then, is whether the mold-exclusion provision in the Kellys' Policy effectively circumvents the efficient proximate cause doctrine. Upon review of the relevant authority, the Court answers the question in the negative.

Although several different courts have given effect to policy provisions drafted to circumvent the efficient proximate cause doctrine, the policy language at issue in those cases is strikingly similar. For example, in *TNT,* 114 F.3d at 732, the Eighth Circuit gave effect to the following provision: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." In *Pioneer,* the U.S. District Court for the District of Nevada held that the policy language at issue in that case did not effectively circumvent the efficient proximate cause doctrine, but quoted the following language which it concluded would have accomplished that goal: "We do not insure for such loss [from an excluded peril] regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or

(c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss." 863 F.Supp. at 1232–33 (quoting *Schroeder,* 770 F.Supp. at 560). Finally, in *Meggison,* the U.S. District Court for the District of Massachusetts gave effect to the following "anti-concurrent cause" provision: "We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events." 53 F.Supp.2d at 142.

The above-quoted provisions were determined to effect a circumvention of the efficient proximate cause doctrine because they clearly and unmistakably "state[ ] that when more than one cause is involved in a loss, regardless of the sequence of the causes, if at least one cause is excluded, the loss is not covered." *See Schroeder,* 770 F.Supp. at 561; *see also Meggison,* 53 F.Supp.2d at 142 ("Anticoncurrent causation provisions in insurance contracts avoid application of the doctrine by expressly stating that a loss is excluded from coverage if it results from a combination of covered and excluded perils."). In contrast, the language in the Kellys' Policy simply excludes losses "consisting of, or caused directly or indirectly by: ... mold ...." While this language generally excludes insurance coverage for mold, it does not expressly and specifically disclaim coverage when one or more covered causes contributes to the mold-related loss. Thus, the language in the Kellys' Policy is inconsistent with the policy language most frequently determined by courts to effect a circumvention of the efficient proximate cause doctrine.[6] This Court finds, as do a majority of the courts that have addressed

---

**6.** Farmers cites five cases, three of which are unpublished, in which the courts enforced mold or rot-exclusion provisions similar, if not identical, to the mold-exclusion provision contained in the Kellys' Policy. The Court

has carefully reviewed each of those cases and concludes that they are factually distinguishable. *See Liristis v. American Family Mut. Ins. Co.,* 204 Ariz. 140, 61 P.3d 22, 26 (2002) (observing, in dicta, that policy lan-

the issue, that in order to contract around the doctrine, the policy provision intended to effect the circumvention must explicitly and specifically disclaim coverage for losses that arise from a combination of excluded and covered causes, regardless of the sequence in which the various causes occurred. Clearly, the language in the Kellys' Policy does not reach that level of specificity. Accordingly, the Court finds that the Kellys' Policy does not effect a circumvention of the efficient proximate cause doctrine.[7]

■ As set forth in detail above, the factual predicate for application of the efficient proximate cause doctrine exists in this case and no exception to the application of the doctrine has been identified. Because the determination as to the efficient proximate cause of a loss presents a question of fact for the jury, *see Shirey*, 274 P.2d at 389; *Sikes*, 168 P.2d at 1020; *Pioneer*, 863 F.Supp. at 1231; *Murray*, 509 S.E.2d at 12; *"Efficient Proximate*

*Causation"*, *supra*, at 402, the Court finds that a question of fact remains regarding the proximate cause of the loss to the Kellys' home. The Court finds, as a matter of law, that this question of fact is material to the present dispute, and that it compels the conclusion that Farmers' conduct may be "reasonably perceived as tortious." *Oulds*, 6 F.3d at 1436–37. Thus, the Court finds that the Kellys have satisfied their burden of demonstrating a genuine issue of material fact and that summary judgment is, therefore, inappropriate as to the Kellys' bad faith claim.

Farmers' alternative basis for summary judgment is founded on the fact that no Oklahoma court has had occasion to address either the factual scenario or the exclusion provision at issue here. Farmers argues that because there is no controlling authority on point, it cannot, as a matter of law, be liable for the tort of bad faith for disputing the Kellys' claim. *See Davis v. Mid–Century Ins. Co.*, 311 F.3d

guage excluding all loss consisting of, or caused directly or indirectly by, mold, would effectively cut off all potential mold coverage; Arizona, however, has not adopted the efficient proximate cause doctrine. *See Cooper*, 184 F.Supp.2d at 962); *Koch v. State Farm Fire and Cas. Co.*, 565 So.2d 226, 229–31 (Ala.1990) (concluding that rot-damage, which was excluded from coverage, resulted from "long periods of decay and deterioration," and that because loss resulting from deterioration was also excluded from coverage, insurer was justified in denying coverage); *Fiess v. State Farm Lloyds*, Civ. A. No. H–02–1912, 2003 WL 21659408, at *6–7 (S.D.Tex. June 4, 2003) (unpublished op.) (enforcing policy provision excluding loss "caused by ... mold," but noting that Texas does not follow efficient proximate cause doctrine); *Myers v. State Farm Fire and Cas. Co.*, No. C8–02–62, 2002 WL 1547673, at *3–6 (Minn.App. July 16, 2002) (unpublished op.) (enforcing policy provision excluding loss "which consists of, or is directly and immediately caused by [mold], regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises

from natural or external forces, or occurs as a result of any combination of these," but finding that mold-related loss did not result from covered cause); *Sather v. State Farm Fire Cas. Ins. Co.*, No. C3–01–1268, 2002 WL 378111, at *2 (Minn.App. Mar. 12, 2002) (unpublished op.) (enforcing mold-exclusion provision identical to the exclusion in *Myers* above, but not addressing efficient proximate cause doctrine). As a consequence, they do not inform this Court's decision on the application of the doctrine under the facts of this case.

7. The Court expresses no opinion as to whether the 2nd Edition of the H6104 Endorsement to the Kellys' Policy effectively circumvents the efficient proximate cause doctrine. That Endorsement provides, in part: "We never, under any circumstances, cover rust, mold, fungus, or wet or dry rot, even if resulting from [policy provisions authorizing coverage for certain water-related losses]." Ex. 9 to Pls.' Resp. It is undisputed that the 2nd Edition Endorsement had not yet been adopted during the pendency of the Kellys' insurance claims. *See* Lashley Dep. at p. 100, 1. 8–16, Ex. 8 to Pls.' Resp.

1250, 1252 (10th Cir.2002) ("For bad faith liability to attach, the law at the time of the alleged bad faith must be settled."). Farmers' argument is inapposite. As discussed above, the efficient proximate cause doctrine has been in force in Oklahoma for over half a century. Therefore, Farmers' reliance on the purported dearth of controlling case law is misplaced. Farmers was not justified in disputing the Kellys' claim as a matter of law, and the Court denies Farmers' alternative ground for summary judgment.

### B. Non–Disclosure Claim

The Kellys' second claim for relief is premised on Farmers' alleged non-disclosure with respect to the potential health problems associated with mold. In essence, the Kellys contend that Farmers was obligated to, but intentionally and fraudulently did not, inform them that they would be vulnerable to a number of serious health problems if they continued to reside in the home. They also contend the health problems that they experienced while living in the home were at least indirectly caused by Farmers' failure to inform them of the risk of mold-related illness. Farmers does not directly address the Kellys' non-disclosure claim in its motion for summary judgment.

 Fraudulent non-disclosure is an established cause of action in Oklahoma. *See Barry v. Orahood*, 191 Okla. 618, 132 P.2d 645, 647 (1942). In *Barry*, the Oklahoma Supreme Court held that "[s]ilence alone is not sufficient to constitute fraud," *id.*, but if a party to a contract has a duty to affirmatively speak, and "remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud." *Id.* The determination as to whether a duty to speak exists necessarily involves a consideration of "the situation of the parties, the matters with which they are dealing, and the subject matter in hand." *Id.*

■ Farmers' failure to address the Kellys' non-disclosure claim is fatal to its motion for summary judgment. The Kellys' claim is based on the assertion that Farmers had an obligation to inform them as to the risks associated with mold exposure. Farmers has presented neither evidence nor argument regarding this alleged obligation, which presumably may exist independent of Policy coverage. Consequently, Farmers has failed to meet its initial burden of "demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Reed*, 312 F.3d at 1194. The Court, therefore, denies Farmers' motion for summary judgment on the Kellys' non-disclosure claim.

### IV. Conclusion

For the reasons set forth in detail above, the Court finds that there exist genuine issues of material fact as to: (1) whether the proximate cause of the loss to the Kellys' home was a covered peril; (2) whether Farmers breached its duty of good faith and fair dealing by denying the Kellys' insurance claim based on the mold-exclusion provision; (3) whether Farmers was under a duty to warn the Kellys about the health risks associated with mold exposure; (4) and if so, whether the Kellys were harmed as a result of the alleged non-disclosure. Accordingly, Farmers' Motion for Summary Judgment [docket no. 34] must be, and hereby is, DENIED.[8]

---

8. Farmers raises two alternative arguments in support of its motion for summary judgment. First, Farmers argues that it is entitled to summary judgment on the issue of damages arising from the Kellys' alleged mold-related

health problems because the Kellys have presented no evidence establishing a causative link between the health problems and mold exposure. Second, Farmers argues that the proliferation of mold in the Kellys' home should be attributed to the purportedly shoddy work of the contractors hired to repair and clean the home. The Court rejects both arguments and declines to consider them further.